UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 1:11CR 83 SNLJ ) |
| JAMES TEBEAU, | ) ) |
| Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

Defendant James Tebeau in Defendant's Memorandum of Law in Support of Motion to Dismiss Indictment (Document #36) states correctly that "... the Government contends that Tebeau has violated 21 U.S.C. § 856(a)(2), which makes it a crime to manage or control a property and permit that property to be used for the purpose of manufacturing, distributing, storing and using controlled substances." (Defendant's Memorandum, p. 1). The defendant argues that his culpability " does not lie in his own actions relating to illegal drugs. In other words, there is no allegation that Tebeau illegally manufactured, sold and/or distributed drugs. Rather, the Government seeks to hold him responsible for the acts of others, i.e., the acts of the various attendees who used Camp Zoe for illegal drug purposes." (Id., pp. 1-2). The government disagrees that it is attempting to prosecute the defendant, Tebeau, for the acts of others but rather is prosecuting Mr. Tebeau for his alleged managing the property of Camp Zoe and permitting that property to be used for the purpose of manufacturing, distributing, storing and using controlled substances.

The defendant continues "The Government's prosecution of Tebeau is flawed because it misinterprets and attempts to apply Section 856(a)(2) to Tebeau where there is no evidence or

allegations that he possessed the illegal purpose proscribed by the statute." (Id., p. 2). The foregoing statement delineates clearly the difference between the position of the defendant and that of the government. It is Mr. Tebeau's position that the statute, 856(a)(2), in order for a conviction of the defendant to be effected, requires that evidence be produced that Tebeau himself manufactured, distributed, stored and used controlled substances. Again, it is the government's position that Tebeau's making available the land of Camp Zoe to others for manufacturing and distributing controlled substances by those others constitutes the crime.

Throughout the defendant's memoranda, his line of reasoning and argument follows his interpretation of what the statute forbids. With candor and accuracy, the defendant sets out the cases which stand for the interpretation the government takes of 856(a)(2).

As the defendant remarks in his memorandum, the government's interpretation is based on the case of United States v. Chen, 913 F.2d 183 (5th Cir. 1990), and the cases following from Chen. In the Chen case, the Fifth Circuit distinguished between § 856(a)(1) and § 856(a)(2). It held that §856(a)(1) requires that for the defendant to be convicted, the person who maintains the property must also intend that illegal drug activity take place; he must maintain property for the specific purpose of distributing or using a controlled substance. (Id., at 189). On the other hand, Chen also held that § 856(a)(2) forbids the owner to maintain the property and allow it to be used by others for the purpose of manufacturing, distributing, storing and using controlled substances. (Id., at 190).

This is the basic difference between the government's position and the defendant's position. The problem with the defendant's position is that the courts, as the defendant sets out in his memorandum, use the interpretation adopted by the government. After explaining the holding in Chen, the defendant, in his memorandum, candidly acknowledges these other cases:

See also United States v. Tamez, 941 F.2d 770, 773-774 (9th Cir. 1991) (adopting the reasoning of Chen and holding that the person who manages or controls the building and rents to others need not have the express purpose identified in Section 856(a)(2); United States v. Wilson, 503 F.3d 195, 197-198 (2nd Cir. 2007) (adopting reasoning of Chen and Tamez with respect to Section 856(a)(2)); United States v. Banks, 987 F.2d 463, 466 (7th Cir. 1993)(same).

(Defendant's Memorandum, p. 10).

In his memorandum, the defendant has set out what he believes the government's evidence against him will be:

> Tebeau owns approximately 350 acres of property known as Camp Zoe in Shannon County, Missouri. Since May of 2004, Tebeau has held large music festivals known as Schwagstock on Camp Zoe. The festivals would take place on various weekends from April through October each year. As a musician, Tebeau also plays at these festivals with his band. Camp Zoe has a capacity of 10,000 people. The festivals typically draw between 5,000 to 6,000 people. Festival attendees would pay a gate fee to access the property for the weekend, where they were permitted to camp on the grounds and enjoy the musicians and bands who were assembled to perform. Approximately 30 to 40 vendors would also attend each event. The vendors traveled from across the country, and they were permitted to sell their goods and wares at Camp Zoe only after filing an application and being approved by the festival organizers. Between 2004 and 2009, Camp Zoe was the site of 25 Schwagstock festivals with a cumulative attendance of over 120,000.

In 2006, the Missouri Highway Patrol, working with the Drug Enforcement Administration ("DEA"), Internal Revenue Service ("IRS") and other law enforcement agencies, began an investigation of alleged illegal drug activities occurring at Camp Zoe. Undercover agents attended the Schwagstock festivals and observed numerous instances where controlled substances were openly sold and used by attendees. Specifically, the agents observed transactions involving cocaine, marijuana, LSD (acid), ecstasy, mushrooms, opium and marijuana-laced food products. Agents also conducted a number of controlled and/or undercover purchases of narcotics from various attendees, some of whom were well known drug traffickers. The Government alleges that Tebeau was aware of the illegal drug activities occurring at Camp Zoe because some of the transactions occurred while he and other members of the C amp Zoe staff were in the immediate area. The Government further alleges that no action was taken to prevent such activity. The Government, however, does not allege that Tebeau was personally involved and/or profited directly from any of the illegal drug transactions occurring at Camp Zoe.

(Defendant's Memorandum, pp. 5-6).

On the other hand, the government paints a quite different picture of the situation at Camp Zoe. After stating that, in his memorandum, Defendant Tebeau implies that the illegal drug activity at Camp Zoe was either minor by some attendees or that it was limited to casual use and sharing substances with friends, the government lays out what it believes the evidence will show at trial:

The Government's evidence at trial will demonstrate that this was certainly not

the case at Camp Zoe. Drug vendors openly walked the camp purveying their drugs for sale. Some marijuana sellers would walk around with backpacks full of pre-packaged marijuana, holding a marijuana stalk with a large marijuana bud in front of them, shouting "Reefer" to the crowd. Some sellers would sit at busy intersections with their backpacks openly displayed to passers-by, showing pre-packaged marijuana, psychedelic mushrooms or other drugs. Other sellers would walk through the crowds shouting "Mollies", indicating that they had illegal drugs in a pill form for sale. LSD sellers would shout "Doses" while purveying their goods. Sellers would offer their drugs in the campgrounds, in the concert areas, along roads, in front of Camp Zoe security guards, in the presence of Tebeau and his other managers and in several commercial vendors locations. Tebeau's staff provided instruction to campers how to avoid police officers and what to do if stopped. Other staff members actively searched for undercover officers in the camp, even approaching some of the Government's officers and questioning them about being undercover officers. Sellers would commonly provide instruction to drug buyers in how to use various kinds of drugs. Other sellers were captured on undercover videotape telling police officers that "People don't come here for the music; they come here for the drugs!" Another drug seller openly bragged that Camp Zoe was the perfect place to sell drugs due to the lack of police presence. Tebeau instructed his staff to permit people in the camp who possessed psychedelic drugs, like marijuana, mushrooms and LSD and instructed his staff to expel people who possessed other drugs, like nitrous oxide, crack cocaine and methamphetamine. The medical facility in Camp Zoe, called "Safestock"

commonly treated drug overdose cases. The back wall of that building has a hand painted sign on it proclaiming that "LSD is a drug." Medical intake records from the medical facility show that Tebeau's staff treated numerous children for drug overdoses, including children as young as 13. Tebeau's security staff commonly had to physically restrain overdose patients from hurting themselves during drug overdoses. Sometimes that restraint was accomplished with only their hands. At other times, the restraint was increased to the use of handcuffs and nylon straps. These events were not uncommon and occurred at each and every Schwagstock festival. The Government's evidence is that Tebeau was aware of all of these activities as he was an active manager of Camp Zoe functions. The evidence of Tebeau's involvement and knowledge of the drug activity in Camp Zoe is overwhelming. Camp Zoe was not a place where illegal drug use was incidental. The vast majority of campers were buying, selling and using illegal drugs. While there was music in the camp, it is clear from the campers' activities that the main purpose of the campers was to buy, sell and use illegal drugs without police interference.

(Government's Response, pp. 7-9).

The defendant argues in his reply memorandum that the indictment in question in this case should be dismissed because it does not satisfy the requirements of Federal Rule of Criminal Procedure 7(c) and is, therefore, insufficient as a matter of law. (Defendant's Reply Memorandum, p. 1). As the parties both state in their memoranda, Federal Rule of Criminal Procedure 7(c)(1) requires that the indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged. Defendant argues the indictment is deficient because it contains "no

operative facts or circumstances to show that Tebeau knowingly and intentionally made his property available for use or did so with an illegal purpose in mind." (Defendant's Reply Memorandum, p. 3).

The language of the indictment is as follows:

> Beginning at a time unknown to the Grand Jury, but including May, 2004, and continuing thereafter to the date of this Indictment, in Shannon County, within the Eastern District of Missouri and elsewhere,
>
> JAMES TEBEAU
>
> the defendant herein, as an owner or occupant, did manage and control approximately 330 acres of land known as "Camp Zoe," and knowingly and intentionally profited from and made available for use, with or without compensation, said place for the purpose of unlawfully storing, distributing, or using controlled substances.
> All in violation of Title 21, United States Code, Sections 856(a)(2); and Punishable under Title 21, United States Code, Sections 856(b); ...
>
>
> Title 21 Section 856(a)(2) makes it unlawful to
>
> manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

The indictment tracks closely the statement of the charge in § 856(a)(2). Usually, this is sufficient. United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008).

The government, in its response, makes reference to the Eighth Circuit Model Criminal Instruction for § 856(a)(2), Instruction 6.21.856B Establishment of Manufacturing Operations-- Managing or Controlling a Manufacturing Place for Compensation (21 U.S.C. § 856(a)(2). As shown in the pamphlet published by West, the third paragraph of the instruction, before specifics are included in the paragraph, reads as follows:

> *Three*, the defendant knowingly and intentionally [rented] [leased] [made available for use with or without compensation] (describe location as charged in indictment) for the purpose of unlawfully [manufacturing] [storing] [distributing] [using] (describe controlled substance as charged in indictment).

(Manual of Model Criminal Jury Instructions for the District Courts of the 8th Circuit, 2011 ed.).

The government has included the third paragraph in its response at page 3, with the specifics as follows:

> 3. That the defendant knowingly and intentionally made available for use, with or without compensation, the property known as Camp Zoe for the purpose of unlawfully distributing or using controlled substances.

The defendant found the first two paragraphs of the government's proffered instruction to be sufficient; he then added:

> However, the last element is stated in terms of the general description of the offense with no operative facts or circumstances to show that Tebeau knowingly and intentionally made his property available for use or did so with an illegal purpose in mind. And even though the last element deals with the defendant's intent, it nonetheless requires some allegations of facts and/or circumstances to show its existence.

(Reply Memorandum, at 3).

The model instruction does not require additional "allegations of facts and/or circumstances to show its existence" as the defendant alleges. It appears sufficient. It met the approval of the Judicial Committee on Model Jury Instructions for the Eighth Circuit.

In fact, Notes on Use 2 and 3 following Instruction 6.21.856B appear to answer the defendant's contention about who must be shown to be performing the illegal activity of manufacturing, storing, distributing, using of controlled substances. They are as follows:

> 2. The purpose element may be satisfied if the individuals using the location are engaged in the illegal activity. See United States v. Banks, 987 F.2d 463, 466 (7th Cir. 1993); United States v. Chen, 913 F.2d 183, 189-90 (5th Cir. 1990).

- 8 -

3. United States v. Meshack, 225 F.3d 556, 571 (5th Cir. 2000). See also United States v. Roberts, 913 F.2d 211, 220 (5th Cir. 1990). Unlike subsection (a)(1), the specific requirement in subsection (a)(2) may be satisfied if the person or persons renting, leasing or using the property possesses the requisite purpose.

The Committee Comments to Instruction No. 6.21.856B further support the government's interpretation of the statute:

See United States v. Chen, 913 F.2d 183, 186-87 (5th Cir. 1990).

The drug-house statute is aimed, like the drug-kingpin statute, at persons who occupy a supervisory, managerial or entrepreneurial role in a drug enterprise, or who knowingly allow such an enterprise to use their premises to conduct its affairs. United States v. Thomas, 956 F.2d 165, 166 (7th Cir. 1992). The Eleventh Circuit has held that the statute contemplates continuity in pursuit of the alleged objective: manufacturing, distributing or using controlled substances. As such, it found that an isolated instance of drug use or distribution or manufacturing is not sufficient to constitute a violation of the statute. United States v. Clavis, 956 F.2d at 1090.

Subsection (a)(2) does not require the person who makes the place available to others for drug activity to possess the purpose of engaging in illegal activity. The purpose in issue is that of the person renting or otherwise using the place. United States v. Banks, 987 F.2d 463, 466 (7th Cir. 1993); United States v. Chen, 913 F.2d at 189-90. The defendant may be liable if he manages or controls a building that others use for an illicit purpose, and he either knows of the illegal activity or remains deliberately ignorant of it. Therefore, under subsection (a)(2), a deliberate ignorance instruction may be submitted if supported by the evidence. Id.

Defendant's claim that the indictment does not satisfy the requirements of Federal Rules of Criminal Procedure 7(c) and is insufficient should be denied.

The defendant claims that the statute is unconstitutionally vague because it does not provide sufficient notice to a music promoter such as Tebeau as to how to conform his conduct so as to avoid liability under the statute. Defendant's argument should be rejected. From the recitation earlier of the government's evidence, it appears clear that a defendant who intentionally supplies a place for others to use to engage in such illegal drug trafficking has notice. It will be for the jury to determine

whether he knew or he did not know that the illegal activity by others was taking place.

The defendant claims that he is left guessing as to how to avoid liability, that he would be required to not hold musical events at all. Those who provide musical events around the country, whether symphony orchestras, high school bands, community bands or choral groups, are able to provide entertainment without providing a venue for drug activity. Defendant seems not to accept the fact that it is the providing of the place for compensation where illegal activities take place that is proscribed. The symphony orchestra members, the high school band members, the community bands or choral groups do not feel that their First Amendment rights are violated. It is only when band festivals are presented under the conditions forbidden by § 856(a)(2) that the promoters may feel restrictions placed on their presentation of music.

The defendant also claims that the indictment does not protect the defendant's rights under the Double Jeopardy clause of the Fifth Amendment.

As the government states, the statute "criminalizes the conduct of a person who controls property as an owner or in another capacity and who knowingly and intentionally allows it to be used for drug manufacturing, storage, distribution or use." (Government's Response, p. 7).

The indictment specifically alleges actions which, whether Mr. Tebeau is found not guilty or guilty, particularizes what is charged: that between the dates of May, 2004, and the date of the indictment, June 16, 2011, in Shannon County, Missouri, the defendant managed and controlled the 300 acres of land known as Camp Zoe and made available for use the place for the purpose of unlawfully storing, distributing or using controlled substances.

The court finds that the indictment does state a crime with sufficient particularity of facts which limit what is alleged in time and place, that is, the defendant's management and control as

owner or occupant of Camp Zoe and making the property available during the stated time period for use for the purpose of unlawfully storing, distributing or using controlled substances. The defendant's rights under the Fifth Amendment to the United States Constitution are protected should the government later seek to bring similar charges against the defendant for supplying Camp Zoe for illegal drug trafficking between the dates set out in the indictment. The defendant's right to be protected from double jeopardy is preserved, regardless of what happens at a trial on the instant indictment. Earlier, the court has set out, when it related the government's statement of facts, what the evidence will be of the activities that took place at the Schwagstock festivals for which the defendant allegedly made the property available. The defendant argues that the indictment does not contain facts showing that the defendant himself engaged in unlawfully storing, distributing or using controlled substances. Under the cases earlier cited, beginning with Chen, § 856(a)(2) does not require that the defendant himself do the drug trafficking but instead that he make the property available for these illegal purposes even if only by others. The same concept of making property available for unlawful activities is in effect in statutes forbidding maintaining a house of prostitution or providing premises where illegal gambling takes place. Providing the place for illegal acts is an act in itself. See the defendant's reference to the statute in question which was originally aimed at crack houses where ecstasy was in common use. (Defendant's Memorandum, p. 19).

As already noted, the government made reference to Eighth Circuit Criminal Instruction 6.21.856B setting out what essential facts must be established for a conviction to be obtained. The Notes on Use following the instruction and the Committee Comments make clear "The purpose element may be satisfied if the individuals using the location are engaged in the illegal activity." and "Unlike Subsection (a)(1), the specific requirement in Subsection (a)(2) may be satisfied if the person

or persons renting, leasing or using the property possessed the requisite purpose." The court finds the reasoning and interpretation contained in the Notes on Use and the Committee Comments has the approval of the Judicial Committee on Instructions for use in the District Courts of the Eighth Circuit. This is the position that the government espouse when it filed the indictment and is pursuing at the present time. The defendant's points in his motion to dismiss and memoranda are based on defendant's argument that § 856(a)(2) should be interpreted the way § 856(a)(1) is interpreted, which requires that in order for a defendant to be convicted, he must be the one manufacturing, distributing or using controlled substances. However, that is not the way the courts cited earlier in the circuits listed above (5th, 9th, 2nd and 7th), following <u>United States v. Chen</u>, interpret § 856 (a)(2). This is also the law in the Eighth Circuit as the Notes on Use and Committee Comments explain.

The attorneys for the parties are to be commended for the excellent research and writing in their memoranda. The parties, the government and the defendant, have been well represented by their attorneys.

The court finds the Defendant's Motion to Dismiss Indictment should be denied.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Indictment (Document #34) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time

for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

                                                        /s/ Lewis M. Blanton
                                                        LEWIS M. BLANTON
                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of December, 2011.